Case number 16-1047, Regent Sherkat v. New England Village Inc. et al. Good morning. I should say good afternoon. Thank you, Your Honor. Good afternoon to Your Honors. The District Court erred in dismissing this case, Your Honors. It ignored the Twombly-Ocasio standard on a Rule 12 motion, especially about the cumulative effect that Your Honors ordered that be evaluated in a Rule 12 motion. And what happened as a result of that is that there is a heightened, the District Court essentially created a heightened pleading standard in a Rule 12. I don't think so, but I understand the argument. And most of the circuits who have been addressed with this state action question have ruled against you based on whatever evidence there was. It's hard for me to understand how further discovery would assist in the resolution of the basic state action question. The District Court didn't seem to think that it needed more evidence. So can you address that? So the two bases on the state action that we have briefed today and what we've gone forward on is the entwinement and traditional state function. Taking the latter first, the traditional state function, I feel like we have very locked down in our brief. Since the 17th century in Massachusetts, it has been a traditional state function to care for people with intellectual disabilities. Okay, so this is an argument on the evidence of record. The District Court simply got it wrong. Well, the District Court on, yes, Your Honor, they got it flat wrong. They relied on the Rockwell case, which was about mental illness. And mental illness, the way the state treats mentally ill people and the way they treat people with intellectual disabilities are two ships passing in the night. And that is why since the 17th century, the state has been involved in, they've been the only player in the care of people with ID. What does that mean? I mean, in other words, not every person with an intellectual disability was under the care of the state. That can't be true. You can't be alleging that. Well, we can't prove it. It just seems implausible. It certainly could be true that they had no system of private contracting prior to the time they decided to go into private contracting. But I would have thought for state action, it's not enough to just say that to the extent the state took on the function of caring, they did it publicly. I thought the argument would have to be that all care of such persons was done publicly. That families were clearly caring for these people without the aid of the state for centuries. It seems implausible to think otherwise. I don't really follow the argument there. I'm missing how I'm supposed to do the state action analysis under the public. Actually, I thought that's what the district court's point was. No, the district court's point was in looking at ROCWA, citing to ROCWA. It doesn't just cite ROCWA. It also said it's kind of implausible. It says, looking at how other courts have, I don't have the exact language, but in the opinion, she doesn't just cite ROCWA and end it. She's making a judgment about what the history would show. And the fact that there was governmental provision of this service, maybe before the government was providing the service for mental health generally, doesn't show that it was an exclusive public function. Well, what the district court relied upon was ROCWA and Cebalski. And ROCWA is a case about somebody who's involuntarily committed into a hospital and was that hospital a state actor. And the ROCWA court said, no, because it's not a traditional state function. And then she relied on Cebalski, which is a Second Circuit case, and Cebalski does some historical analysis of how the state of New York traditionally handled it. Well, here's what she says. She says, after citing this case, plaintiffs argued that this history, the history you're saying she relied on, does not address care for intellectually disabled as opposed to care for the mentally ill. But plaintiffs offer no facts suggesting that the care of intellectually disabled individuals involved greater state action historically than the care of the mentally ill. In common sense and case law in neighboring jurisdictions, we'd suggest the opposite conclusion. So that's the factual finding that you're saying she erred on. She's citing to Cebalski, which is a Second Circuit New York State case, which discussed the historical role of the state of New York in the care for people with ID. She's quoted a passage of it that says, based on historical record in New York State, care of the mentally ill, much less the mentally disabled, was a function traditionally and exclusively of the United States. So she's saying a neighboring jurisdiction has concluded that the history there was that both were roughly speaking the same. And she's saying on the basis of what was going on in New York, why would I have any reason to think it was different in Massachusetts? And she says there's nothing in your pleadings that demonstrates that she's wrong about that, other than the fact that there was some care provided by the state. But that's not enough to show it's an exclusive state function. In the complaint, we go back to, I believe, 1845, where the Fernald Developmental Center, the Fernald School, whatever its predecessor name was, was the first. They're now known as intermediate care facilities, institutions, whatever you want to call them. The Fernald was the first in the Western Hemisphere, and it was established by the state of Massachusetts. But was it exclusive? It was exclusive. None of this was being provided, in probably most cases, by family? I doubt it was in most cases. I can't prove a negative that it wasn't provided. Well, presently, would you say that that's not the case? DDS has 32,000 people in Massachusetts. And you say that's all that's involved here? So, for example, in your client's case, isn't it a fact that he has been helped basically by his family up to now? Yes, with the assistance of the Home and Community-Based Waiver. In other words, you have to be ICF-eligible to receive waiver benefits. So, Sheram Sherakat is ICF-eligible. That triggers assistance by the waiver, and the family receives assistance through the waiver. Were there no waiver, then they would have only one place to go. But is your argument that the state action is with reference to institutionalized care, as opposed to care generally? And then the only history of institutionalized care that we have in Massachusetts was state-provided for a long time. There is no other record of any other care. I mean, I can't prove a negative. Of course, there must have been people served at home. But you say, does that not count for this inquiry, because the relevant inquiry is institutionalized outside the home care? I mean, if you... I wasn't thinking about what function we're evaluating. I mean, if we think about schooling, the fact that there was a public school obviously isn't dispositive. But I wouldn't think it would be dispositive. I think it would be, unless there were some private schools, because we're comparing schools. So what are we comparing to the Fernald home? Is it a family, or is it another institutional provider? I think the key point with the court's opinion is how... is the Rockville case, if I may, Your Honor. If you look at how people with mental illness are cared for, that was always... private, deliverable service was always present in the Commonwealth. I mean, and we cite to that in our brief. You mean like there were private mental hospitals and that kind of thing? Yes. Where there never were any for mentally disabled persons. They don't exist. So the exclusive public function is the institutionalized care of such persons. And you're saying that was always a state function up until recently. It's always been a state function, period. Once the Ritchie case and the home and community-based waiver came along, those funds, the waiver allowed the funds being spent on institutions in Massachusetts to be spent on group homes. And that waiver has been, you know, it has evolved over time. You closed on the 1983 claim under her opinion, even if you went on state action, right? I'm sorry? She found you didn't state a 1983 claim for reasons other than just lack of state action. Or am I wrong about that? I believe she addressed... Put it another way, you need some underlying violation. That's correct. And she found there was no underlying violation. Yes, what Dr. Charikhan is trying to enforce through the 1983 claim is the choice provision. And so if she's right about the choice provision, the state action issue doesn't matter. That's what we're trying to enforce. If she's right that you're wrong about the choice provision, then you have no claim even if there was state action. On the other hand, there's a circuit split on that point. On the state action? No, no, on the choice provision. On the circuit split, yes, I'm sorry, Your Honor, yes. And to avoid getting into that circuit split, one could just simply rely on her state action finding. Is it really true that there were no private facilities at all for intellectually disabled people as opposed to mentally ill people? That's what I believe, Your Honor, and that's what our research and our brief has shown. The delivery of services for the intellectually disabled delivered through a private entity only came about as a result of the waiver. Rich people didn't pay to have someone else take care of their intellectually disabled? If you look at the statutory history of Massachusetts, the way mental illness, this is instructive in response to your question, Your Honor. You see the state funding services. If you look at the statutory history of Massachusetts, you can see the state funding services at McLean's. McLean is a hospital specifically named. That's exactly what I had in mind. Yes, MGH, Children's Hospital. The state was paying those, but you don't see that for people with intellectual disabilities. Does McLean have a history of treating people with intellectual disabilities, regardless of who pays for it? Not to the best of my knowledge, no, Your Honor. From the 17th century onward, the treatment has always... It was either in the family or where? Well, a person could be cared for at home. I mean, that goes without saying, I suppose. How many... The reason for Fennel's creation, though, was this societal demand for there was no place for these people. They were relegated to almshouses. This is stated in our brief. So the almshouse, but that was a state function as well. And the creation of the Fennel Developmental Center, I believe that started to be developed in 1845, was a result of this burgeoning population. But there is no evidence that you had a parallel system to McLean Hospital or a psych unit at MGH for people with intellectual disabilities, and the Massachusetts law always separated the two populations. But how does that help you? Doesn't that hurt you? Because if the tradition was the state just didn't get involved in that, it was left to the families. I don't see how you meet the public function test. No, our argument in our briefing, Your Honor, is the state has always assumed that function and never contracted out and never privatized it from the 17th century onward. That's dependent on the idea that we look at it from the perspective of a decision to have institutional care at all. Because it is a little bit odd to say it's an exclusive governmental function, and we know it is because no one thought it was a function anybody should be performing for 100 years. Because that sort of suggests it's not an exclusive governmental function. It was an invention in the late 19th century to think about caring for these people at all in an institutionalized manner. No, in our brief, Your Honor, we go back to the 17th century, to the mid to late 1600s, before the Commonwealth, when it was a colony, when we were part of England. Even at that point, on the books is institutional care. What split off, what stopped institutional care was the waiver. Because it enabled you to, the states, to pay bills or spend money in some place other than an institution. Is the circuit split on the choice issue really implicated by the facts of this case? I wasn't quite sure why. Your client is asking for something quite specific. And I wasn't quite sure that the other circuits, even if they disagree about how to read the choice provision, that any circuit takes the position that you're claiming is the right one, which is that you actually get to select the particular place. And the text of the provision, I don't quite see where it's telling you that you get to select a particular home instead of being informed about options. As we say in the brief, so that's the split, the circuit split. It is a circuit that says you get to actually select the particular facility as opposed to the type of facility. Well, if you read those two provisions of 1396N, we've paired them off in our brief, I believe that's what it says. In this particular case, we have eligibility at NEV. So if it wasn't available under the waiver, I don't think that 1396 would require the state to develop the program that you've dreamed up. But that's not the case here.  It has 80-some residents or a capacity of 80-some people. And we have letters attached to the complaint where we're eligible. But to your point, on the Bertrand, the 7th Circuit versus the 9th Circuit split, and the district court kind of adopted the Bertrand standard. It renders the 1396 and the choice provisions of that really an empty husk because all it says is then that you're entitled to information but nothing further. Whereas the 9th Circuit and the Ball case, they do the same parsing of that statute that we have. But don't they say you're entitled to a facility within a class of facilities as opposed to a particular named facility? If it's available under the waiver, you get the choice. That's what the law says. I don't think you're quite answering my question. Okay. I'm sorry, Your Honor. You're not arguing that you were denied an opportunity to be selected in a class of facilities of a certain type. In the statute, it lists various types of facilities, I thought, various types of care that you can select, right? I want this type of care, that type of care. What's available to choose from as a result of the waiver, which is a contract between the state and the federal government? Here's our proposed plan of types of residence that we will offer. And then the federal government agrees or doesn't agree. But once they're in agreement, they'll say you can spend money on those types of facilities, but they come with strings. And those assurances, those strings are assurances. And is this particular NEV village the only one of that type that is available? Is there anything in the record that shows it's the only one? It's a group home. And there are no other group home of that type in Massachusetts that's available? Because your claim is to be placed in that particular home. That's correct, Your Honor. And is there a case that says you can select the particular group home you want to be in, as opposed to saying you might have a right to be placed in a group home? That would be the Ball case. Ball says you can pick the particular place. Yes. And that's what, you know, we've cited to 1396, and we've cited to the statutory history. The whole idea in getting away from institutions was to give people a choice, whether that's an elderly person in the nursing home or somebody with an intellectual disability. That's the whole purpose. We don't want to confine people to institutions anywhere. They have a choice. They have a right to choose. It doesn't mean the state has to create something that's not available. But group homes are available under the waiver, and my clients spent years kind of identifying the appropriate place. They've deemed them eligible. And that's where we are, Your Honor. Thank you. Thank you. Thank you. Mr. Callan, then. Good afternoon. I'm Christopher Callan, and I represent the New England Village, Gail Brown, Ginger Sullivan, and Roy Carrero. The Court's decision brought was correct, and further discovery or another shot at this case is not going to help for some of the reasons that have been discussed this morning. If I could start with the 1983 claim and with regard to the concept of state action. State action is a primary and necessary element of any 1983 claim. So without state action, there is no claim. In this case, there is no possible hope of establishing state action under this circumstance. Starting with the public function test, as Your Honor has recognized, an important element of that is it is an exclusive public function. That's throughout the case law, including the Jarvis case from this circuit. The plaintiff's complaint recites a long historical record of how the Commonwealth has participated in the care for this population and how that care generally has evolved over time. But nowhere does it allege or could it allege that that was an exclusive public function. And exclusivity is a very high burden. Your Honor mentioned schooling. Schooling has not qualified as an exclusive public function because people are homeschooled. As Your Honor pointed out, this plaintiff, Mr. Shirkat, has spent most of his life at home. So to say that the care of this population has been an exclusive public function just isn't correct. My brother also argues that he needs the joint action test, which is a separate opportunity to establish state action. To do that, there would have to be evidence, factual evidence, showing or allowing a reasonable inference that the state has so far incinerated itself into a position of interdependence with New England Village that it was a joint participant in the challenged activity. And there are certain factors that this circuit looks at. That's whether or not the state, excuse me, whether New England Village is independent in its day-to-day affairs from the state, whether it shares profits from the challenged activity, and whether it's used public facilities. The challenged activity here is the denial of admission. There's no suggestion in the complaint or anywhere in the record that the state was involved in that decision. The state was involved in making funding available and making a referral. But that's the decision that was completely and entirely New England Village's decision. At the end of the day... I'm sorry. Even if the state had been involved, wouldn't you nonetheless take the position in the decision as to this individual? Wouldn't you nonetheless take the position that there is still insufficient state action because the school is independent, it does not use public facilities, so on and so forth? Correct. Are you sure you want to hang your case on the fact that the school officials made the decision independently? It's one of the factors. I don't certainly hang the case on that. It's one factor. I think at the end of the day, the involvement is the provision of money. And the case law is clear that money alone doesn't create sufficient intertwinement. My brother relies on the Murphy case for both joint action and public function. I think the Murphy decision relies only on money and stops there. As for public function, the Murphy decision doesn't reference exclusivity at all. It's silent on that point. So you think Murphy is just wrongly decided and we should say so? Correct. I don't think, at least on the decision we have, it doesn't appear that the court considered the factors that the circuit requires be considered. As to the substantive counts under the 1983 claim, beginning first with the allegation of the Medicaid, violation of the Medicaid Choice Act, I think it's an overstatement to say that there's a circuit split on the issue of choice. And I think it comes down to what the Medicaid provision choice, what the nature of the choice is. And I think it goes back, if one is to read the regulations and read the cases, and it's a function of the evolution of the care of this population. And the choice is a choice between institutional care and, as the statute itself says, hospital, nursing facility, or intermediate care, or an alternative to an institution setting. So the choice isn't for a specific facility. The choice is between institutional care, hospital, nursing facility, or intermediate care facility, or a residential facility like the Raymond Village. And nothing in the Ninth Circuit opinion says you get to pick the particular residential facility. Correct. So there's no court that has held that, and that's what their claim is, that they were denied, right? Correct. And the Ball decision on which they rely found that in Arizona, because there was use of health care attendance in the non-institution setting, and the attendants were so bad, for lack of a better description, they showed up late, they quit, that it frustrated the choice. There was no real choice. You could be in an institution or a non-institution, but because of the way the attendants were managed... Are there other residencies for which this individual is eligible and may have said he's eligible? Yes. If a category only has one institution in it, then it looks different than if a category has several institutions in it. So what's the answer? The answer is that there are other institutions that he is eligible for. There are other institutions that the state has recommended he consider. I believe there's two, and you'll find that in an attachment to the plaintiff's complaint, which is a letter from the department to his father. So he has had choices of other residential facilities. And the complaint doesn't deliver to the contrary? No, the complaint was alleging that he was being denied his choice for this one. He does not allege that he's been denied a choice to be in any residence, or does he? He alleges that he was denied the choice of this facility. He doesn't really address... He does not address whether there was other ones that were available. Correct. So if we decided on that ground, we wouldn't have to get into the circuit split. Correct. You don't have to get into the circuit split because there's no state action. And you have to have state action. I don't think you have to get into state action. I'm just wondering if you don't have to get into the state action or the circuit split. I think to consider it a 1983 claim, you have to at least start with state action. And if there's no state action, that's the end of the 1983. If there isn't state action, then he needs... But you're allowed to start with the substantive right, and if there's no substantive right, you don't have to do the other piece. I suppose you could. I'm thinking of it as elements of proof. But correct, you could take it that way too. So again, I don't think that a fair reading of Ball is to say that that court decided that the choice provision allows you to select the particular facility. I think it's institutional versus non-institutional setting. And again, my brother made the point that any other reading of Ball means that there is no choice. It's just provision of information. Again, it's the provision of information as to the alternatives and any choice between the institution and other... Also, the statute itself uses the word feasible alternatives, which is another factor we're looking at the complaint alone. But at the end of the day, the choice can't be the individual's without regard to any other factor. It has to be a feasible alternative. It has to be a reasonable alternative. If it were to be the other way, if every person in this population in the Commonwealth decided tomorrow that they wanted to go to New England Village, where would we all be then? So I believe it's an overstatement to say that there's a circuit split and an overstatement to say that the law provides a unilateral choice of where you receive care. Moving to Count 1, which is the ADA claim, the court was correct in its decision on that point because, again, the complaint does not and cannot establish the essential elements of an ADA claim. New England Village is not a public entity, which the courts have defined as a creature of state or municipal law. New England Village is alleged in the complaint to be a private corporation. It's a private contractor. By contracting with the state, that doesn't transform it into a public entity. And secondly, to prove an ADA claim, the plaintiff would have to prove that the decision he was discriminated against because of his disability. There is no evidence whatsoever in the complaint about the decision. All the complaint has is the plaintiff's reaction to the decision and his disappointment in the decision. And lastly, as to the negligence claim, there's simply no duty under common law in this circumstance. These are separate parties negotiating at length. The plaintiff was represented by counsel throughout. He was represented by a health care aid expert. There's simply no duty on behalf of the village under common law negligence. So we would ask that the decision be affirmed in its entirety. Thank you. Thank you. Thank you. Good afternoon. Good afternoon. May it please the Court, Jesse Boudreau on behalf of Defendant Ellen Howe, who has been named in this case in her official capacity as the Commissioner of the Department of Developmental Services. The plaintiff in this case has made two claims against the Commissioner, one for a violation of the Massachusetts Civil Rights Act, the other styled simply as a request for a definitive relief. The civil rights claim was correctly dismissed because the plaintiff did not allege the requisite threats, intimidation or coercion within the meaning of the act. It is not enough to assert, as the plaintiff has here, that a violation of state law or an official's refusal to enforce state law states a claim under the act. That's the SJC's decision. It's the same decision in the Longval case cited in the District Court's order, and I would refer to the other cases cited in our brief. Now, the other count, the one styled as a request for injunctive relief, states a remedy and not a substantive cause of action. In addition to that, I would point out that the plaintiff in this case has made no written appellate argument with respect to that count, and on that basis as well, the appeal with respect to that count has been waived and the decision should be affirmed. There's one final issue I would note, and that is that even if either one of these claims had been well pled, they would still be subject to dismissal at this point for lack of subject matter jurisdiction. And I point here to the Supreme Court's decision in Pennhurst State Hospital v. Halderman under the 11th Amendment. A plaintiff cannot in federal court seek prospective injunctive relief against a state official seeking to compel compliance with state law. That is what the plaintiff seeks with respect to Commissioner Howe. That is all that the plaintiff seeks, and it is not proper or permissible under the Halderman decision. Thank you.